IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL GIBSON,<br>    Plaintiff, | : <br> : <br> : | |
| v. | : <br> : | CIVIL ACTION NO. 25-427 |
| CITY OF PHILADELPHIA, et al.,<br>    Defendants. | : <br> : | |

**MEMORANDUM**

**MARSTON, J.**                                                                                 **April 16, 2025**

*Pro se* Plaintiff Michael Gibson brings this lawsuit against the City of Philadelphia and several members of the Philadelphia Police Department ("PPD") in connection with the PPD's Internal Affairs Division's ("IAD") investigation of his complaint of police misconduct and the resulting IAD report. This is Gibson's second lawsuit against the City of Philadelphia and members of the PPD in connection with the IAD report. His prior lawsuit was dismissed without prejudice. *See Gibson v. City of Philadelphia*, No. 23-4227, 2024 WL 3792225, at *10 (E.D. Pa. Aug. 12, 2024). In this lawsuit, Gibson asserts similar claims and requests leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Gibson leave to proceed *in forma pauperis* and dismiss his Complaint.

**I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

In his first lawsuit, Gibson asserted equal protection and excessive force claims in connection with a February 20, 2015 incident during which Philadelphia police officers

---

[1] The facts are taken from Gibson's Complaint, which consists of the Court's standard form complaint as well as numerous handwritten pages. The Court also refers to pleadings from Gibson's prior lawsuit because it contains similar facts and Defendants. *See Gibson*, 2024 WL 3792225, at *1–3. The Court adopts the pagination supplied by the CM/ECF docketing system. Grammar, spelling, and punctuation errors from Gibson's submissions are cleaned up where necessary.

physically restrained Gibson while removing his "developmentally disabled" sister from their home.² *See Gibson*, 2024 WL 3792225, at *1–2.  Gibson alleged that he filed a complaint about PPD's handling of the incident seven years after it occurred.  *Id.* at *2.  The IAD then investigated his complaint and published a report in January 2023, which allegedly had multiple inaccuracies and misrepresentations.  *Id.* at *2.

At the screening stage, the Court dismissed Gibson's Complaint in its entirety.  First, the Court dismissed all Gibson's claims based on the February 20, 2015 incident as time-barred.  *Id.* at *4–5.  The Court next dismissed Gibson's equal protection claims that arose out of the IAD investigation into the February 20, 2015 incident and the corresponding IAD report because Gibson had failed to allege facts that raised a plausible inference that any Defendant purposefully discriminated against him based on his race.  *Id.* at *7–8.  The Court also dismissed his related state law claims for lack of jurisdiction.  *Id.* at *8.  But the Court allowed Gibson to file a second amended complaint in the event he could assert facts to cure the defects that the Court had identified.  *Id.* at *10.  Though Gibson did file a second amended complaint, he simultaneously sought to voluntarily dismiss his case.  (*See Gibson v. City of Philadelphia*, No. 23-4227, Doc. Nos. 22, 23.)  So the Court granted Gibson's request for voluntary dismissal.  (*Id.* at Doc. No. 24.)

Two months later, Gibson filed this civil action, naming nine Defendants in his Complaint:  (1) the City of Philadelphia; (2) Gerard Brennan; (3) Carolyn Young; (4) Richard Sharp; (5) "Cpl Brooks"; (6) William Yancer; (7) Pasqual Agozzino; (8) George J. Kappe; and

---

² Gibson also asserted claims about disputes he had with his tenant, which led to housing and sex discrimination complaints filed against him.  *See Gibson*, 2024 WL 3792225, at *3, 9–10.  Gibson does not reassert those claims in this civil action.

(9) Jamison Rogers.[3]  (Doc. No. 2 at 1.)  Defendants Brennan, Young, Sharp, and Brooks are alleged to be police officers with the PPD; Defendants Yancer, Agozzino, and Kappe are also alleged to be police officers within the PPD's IAD; and Defendant Rogers is alleged to be the Director of Investigations with the Philadelphia Citizens Police Oversight Commission ("CPOC").  (Doc. No. 2 at 1–3.)

Gibson alleges that he is a 75-year-old disabled black man.  (*Id*. at 8.)  He states that he filed two complaints of excessive force against the PPD, one in connection with the February 20, 2015 incident involving the removal of his sister, and another in connection with an alleged assault by a police officer at the 22nd District offices on September 20, 2023.  (*Id*. at 9, 35.)

The bulk of Gibson's allegations in the Complaint center on the IAD investigation into the February 20, 2015 incident and the corresponding January 23, 2023 IAD report.  Gibson includes minimal facts about the February 20, 2015 incident itself but rather states in conclusory terms that it involved "assault, battery, illegal restraint, excessive force, threat of deadly force, [and] false imprisonment."  (*Id*. at 11.)  He alleges that Defendant Yancer led the IAD investigation and drafted the IAD report.  (*Id*. at 9, 11.)  According to Gibson, the IAD report was "egregious, appalling, defamatory, degrading, and laden with fraudulent statements."  (*Id*. at 10.)  Yancer allegedly "sought to make [Gibson] look like a liar, a mentally ill person, . . . [and] irrational" in the IAD report.  (*Id*. at 11.)  For example, Yancer allegedly misrepresented "multiple material facts," failed to include the number of police officers involved, inaccurately portrayed Gibson as the aggressor instead of the victim, and fabricated Gibson's statements about the FBI intercepting documents from city officials.  (*Id*. at 11–12.)

It is not alleged in the Complaint how Defendant Agozzino was involved in the IAD

---

[3] Defendants Brennan, Young, Sharp, Yancer, Agozzino, and the City of Philadelphia were named as Defendants in Gibson's prior lawsuit.  *See Gibson*, 2024 WL 3792225, at *1 n.3.

investigation or the drafting of the IAD report; however, Gibson alleges that Agozzino agreed with Yancer about the substance of the IAD report, "conspired to conceal and cover up federal claims and civil rights violations," and "purposefully discriminated against [Gibson] on the basis of race." (*Id*. at 12.) Gibson also fails to allege in the Complaint how Defendants Sharp, Brennan, and Young were involved in the 2015 incident, the IAD investigation, or the corresponding IAD report. But Gibson alleges that Sharp "conspired" with Yancer and Agozzino and that Brennan and Young are "equally guilty of violating" his Fourteenth Amendment rights. (*Id*. at 16.) Defendant Kappe, the "IAD Head of Internal Affairs Officer Inspector," allegedly "signed off" on the IAD report's findings and was thus an alleged participant in the "conspiracy" to cover up police corruption. (*Id*. at 14, 15.)

Gibson allegedly had "numerous phone conversations" with Defendant Rogers, the CPOC Director of Investigations, following the release of the IAD report on January 23, 2023. (*Id*. at 18.) Gibson states that during his conversations with Rogers, "it became evident" that Rogers was acting "in concert" with Yancer, Agozzino, and Kappe to deny Gibson his constitutional rights. (*Id*. at 18, 20.) Rogers allegedly told Gibson that he believed Gibson's allegations of "public corruption and police brutality" were unfounded. (*Id*. at 18.) During one conversation, Rogers asked Gibson if he wanted "to be referred to someone for psychiatric help." (*Id*. at 19.) Gibson also alleges that in April 2023, Rogers violated his constitutional rights by communicating with members of his staff and an assistant district attorney about the IAD investigation. (*Id*. at 20, 26–27.)

In September 2023, Gibson went to PPD's 22nd District to "inquire as to why his criminal complaint for fraud was not sent to the central detectives." (*Id*. at 28, 35.) It is not clear from the Complaint whether the "criminal complaint for fraud" is a reference to his complaint

4

that led to the IAD investigation or whether it is a reference to a different complaint of misconduct.  After waiting to speak with someone at the 22nd District for four hours, Gibson was allegedly "assaulted by Ezekiel Cortes," a PPD officer who is not named as a Defendant in this lawsuit.[4]  (*Id*.)  Gibson states that after the alleged assault, Defendant Brooks "refused to write a report" and did not assign a district control number, both of which allegedly violate PPD policy.  (*Id*. at 29, 36.)  Gibson allegedly received no response to his request for bodycam footage of the incident with Cortes.  (*Id*. at 29.)

Based on these allegations, Gibson asserts constitutional claims under 42 U.S.C. § 1983 for Fourteenth Amendment equal protection and due process violations, First Amendment retaliation, and Fourth Amendment unreasonable seizure.[5]  (*Id*. at 2, 4.)  He also asserts conspiracy claims under 42 U.S.C. § 1985(3), claims under the False Claims Act, and state law claims for libel.  (*Id*. at 38.)  Gibson seeks money damages.  (*Id*.)

## II.    STANDARD OF REVIEW

The Court will grant Gibson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  28 U.S.C. § 1915(e)(2)(B)(ii) thus requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v.*

---

[4] Gibson says he did not name Cortes as a Defendant because he instead intends to have the incident with Cortes investigated by the Philadelphia District Attorney, a special prosecutor for the Pennsylvania Attorney General's Office, or the Department of Justice.  (Doc. No. 2 at 29–30.)

[5] Gibson also asserts due process claims under the Fifth Amendment.  But "[t]he due process clause of the Fifth Amendment 'only protects against federal governmental action and does not limit the actions of state officials.'"  *Beahm v. Burke*, 982 F. Supp. 2d 451, 458 (E.D. Pa. 2013) (quoting *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2011) (*per curiam*)).  Because Gibson names only city employees and not federal actors, the Court will consider his due process claims under only the Fourteenth Amendment.

5

*McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Gibson's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

In addition, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence."). As Gibson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

### III.    DISCUSSION

#### A.    Constitutional Claims Pursuant to Section 1983

Gibson asserts Fourteenth Amendment equal protection and due process claims, First Amendment retaliation claims, and Fourth Amendment unreasonable seizure claims against all

Defendants.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred," such as the constitutional claims asserted by Gibson.  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotations omitted).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each individual defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

   *1. Equal Protection Claims.*  Gibson first brings equal protection claims against Defendants.  As best as the Court can discern from the Complaint, his equal protection claims are based on the IAD investigation of the February 20, 2015 incident and the corresponding IAD report.  In support of the claims, Gibson alleges that Defendants misrepresented material facts in the IAD report, omitted the number and names of the police officers involved, and "purposefully discriminated" against him based on his race.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "To state an equal protection claim for racial discrimination under Section 1983, [a plaintiff] must establish that the actions of the[ ] defendants '(1) had a discriminatory effect, and (2) were motivated by a discriminatory

purpose.'" *Tucker v. City of Philadelphia*, No. 16-3104, 2017 WL 5010032, at *2 (E.D. Pa. Nov. 2, 2017) (quoting *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002)). To establish a discriminatory effect, a plaintiff must "show that he is a member of a protected class and that he was treated differently from similarly situated individuals in an unprotected class." *Id*. (cleaned up); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) ("To establish a § 1983 claim, a plaintiff must prove that a defendant's discriminatory action was purposeful . . . . They must demonstrate that they receiv[ed] different treatment from that received by other individuals similarly situated." (internal quotations omitted)). "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotations omitted).

Gibson's equal protection claims fail for the same reasons they failed in his prior civil action. He alleges no facts in the Complaint that raise a plausible inference that any Defendant purposefully discriminated against him based on his race. As the Court explained in Gibson's prior case, "[s]imply omitting names from a report or mischaracterizing the events that form the basis of the report does not alone raise an inference of race discrimination." *Gibson*, 2024 WL 3792225, at *8. And here, Gibson adds nothing more except for conclusory assertions of discrimination, including: (1) that Yancer and Agozzino "purposefully discriminated against [him] on the basis of race," (2) that all Defendants engaged in a conspiracy to violate his constitutional rights "with racial animus," and (3) that the IAD report's inaccuracies "exhibited racial hatred and animus." (Doc. No. 2 at 11, 12, 31.) Gibson's conclusory statements of race discrimination are not enough to meet his pleading burden. *Children's Health Def., Inc. v. Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 84 (3d Cir. 2024) (stating that to plead a successful equal protection claim, the plaintiff "must offer more than conclusory assertions"). Plus, Gibson

8

has again not alleged that he was treated differently than similarly situated individuals who were not in his protected class, which is fatal to his equal protection claims premised on race discrimination. *See, e.g.*, *Tucker*, 2017 WL 5010032, at *2 (dismissing race discrimination equal protection claims against police officers where the plaintiff did not allege any facts about similarly situated individuals outside of the protected class).

  *2. Due Process Claims.* Gibson next appears to assert Fourteenth Amendment due process claims based on the IAD investigation and corresponding January 23, 2023 report, alleging without any specificity that each named Defendant violated his due process rights. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (internal quotations omitted). Gibson fails to allege any facts to support a plausible procedural due process claim.[6]

  To start, Gibson does not identify any individual interest upon which he bases his claims. And to the extent he bases his due process claims on Defendants' failure to adequately

---

[6] Based on the allegations in the Complaint, it does not appear that Gibson intends to assert a substantive due process claim. A plaintiff may assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). When addressing a substantive due process challenge, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Benn v. Universal Health Sys.*, Inc., 371 F.3d 165, 174 (3d Cir. 2004) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). To the extent Gibson intended to assert a substantive due process claim, the claim is dismissed. Nothing in the Complaint supports a reasonable inference that Defendants' actions were so egregious or outrageous as to shock the contemporary conscience.

investigate the February 20, 2015 incident, these claims must fail because there is no constitutional right to such an investigation. *See Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) (*per curiam*) ("The District Court also properly dismissed Sanders' claims that officials violated his right to due process by failing to properly respond to the reports of alleged thefts from his home. As to Sanders' claim against the Pennsylvania State Police and the Bradford County police officers, the District Court correctly reasoned that there is no constitutional right to the investigation or prosecution of another."); *Fuchs v. Mercer County*, 260 F. App'x 472, 475 (3d Cir. 2008) (dismissing claim based on an alleged deficient investigation into the plaintiff's complaint because "[t]here is no statutory or common law right, much less a constitutional right, to [such] an investigation") (quoting *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007)); *Lombardo v. Zanelli*, No. 24-1383, 2024 WL 1743759, at *6 n.7 (E.D. Pa. Apr. 23, 2024) ("Additionally, Lombardo may not bring a due process claim based on his assertion that officers failed to investigate his claim of assault, robbery, and kidnapping."). Plus, Gibson's allegations that Defendants denied him due process are entirely conclusory and thus insufficient to state a plausible claim. *See Coulter v. Forrest*, 606 F. App'x 634, 636 (3d Cir. 2015) (*per curiam*) (affirming dismissal of due process claims where the plaintiff "set forth only conclusory allegations" and thus "fails to meet the pleading standard"). And to the extent that Gibson bases any due process claim on Brooks refusing to write a report or failing to assign a district control number to his unspecified complaint in violation of PPD policy, the claim is not viable because "a violation of a police policy does not in itself suffice to establish a constitutional violation." *Rodriguez v. Panarello*, 119 F. Supp. 3d 331, 340 (E.D. Pa. 2015). Nor can the Court discern any other plausible basis for a due process claim against Defendants from the allegations in the Complaint.

*3. First Amendment Retaliation Claims.*  Gibson then asserts First Amendment retaliation claims against Defendants.  To state a plausible First Amendment retaliation claim, a plaintiff must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  The factual basis for any First Amendment retaliation claim is not clear from Gibson's Complaint.  Gibson states only that he asserts First Amendment retaliation claims "for exercising [his] First Amendment rights." (Doc. No. 2 at 6.)  To the extent Gibson bases his claims on the filing of the police misconduct complaint that ultimately led to an IAD investigation and report, Gibson does not allege how any of the named Defendants retaliated against him after filing the complaint.  In other words, Gibson has failed to allege facts to support a plausible inference that his police misconduct complaints—or any other constitutionally protected conduct—were a substantial factor in any adverse action taken by a named Defendant.  Thus, his First Amendment retaliation claims must be dismissed.

*4. Fourth Amendment Claims.*  Gibson also asserts Fourth Amendment unreasonable seizure claims against Defendants.  Like his previous claims, the factual basis for Gibson's unreasonable seizure claims is not clear from the Complaint.  To the extent Gibson bases Fourth Amendment claims on the events that took place on February 20, 2015, those claims are barred by the two-year statute of limitations.  *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (explaining that the statute of limitations for § 1983 claims is governed by the personal injury tort law of the state where the cause of action arose and that Pennsylvania has a two-year statute of limitations for personal injury actions); 42 Pa. Stat. and Cons. Stat. § 5524(7) (stating that

actions founded on tortious conduct or sounding in deceit or fraud must be commenced within two years). To the extent that Gibson bases his Fourth Amendment claims on Cortes's assault at the 22nd District, Cortes is not named as a Defendant and no named Defendants are alleged to be involved in the assault. (*See* Doc. No. 2 at 29–30 (noting that Gibson "is declining" to sue Cortes at this time).) There are no other allegations in the Complaint that describe a seizure of Gibson, let alone an unreasonable one. So his Fourth Amendment claims must be dismissed.

     *5. Monell Claims.* Gibson's federal constitutional claims against the City of Philadelphia must also be dismissed because nothing in the Complaint suggests that Gibson's alleged constitutional harm resulted from a policy or custom of the City of Philadelphia. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that, to state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation); *Sorrells v. Phila. Police Dep't*, 652 F. App'x 81, 83 (3d Cir. 2016) (*per curiam*) (affirming dismissal of claims and noting that "even construing [the plaintiff's] complaint as against the City of Philadelphia, Sorrells did not plead that any municipal policy, custom, or practice led to the purported constitutional violations at issue, as a viable municipal liability claim requires."). Plus, because Gibson has not stated an underlying constitutional violation, there is no basis for a *Monell* claim against the City of Philadelphia on these facts. *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.") (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . . , it is inconceivable that [the municipality] could be liable")).

***

Accordingly, the Court dismisses all of Gibson's constitutional claims under 42 U.S.C. § 1983 as insufficiently and/or untimely pled.

**B.      Conspiracy Claims**

Gibson next asserts conspiracy claims pursuant to 42 U.S.C. § 1985, alleging that Defendants Yancer, Agozzino, Kappe, Sharpe, and Rogers conspired to "interfere with [his] civil rights" by drafting, signing, or agreeing with the IAD report even though it allegedly contained false statements and mischaracterizations.  (Doc. No. 2 at 11, 12, 14.)  "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) ("If the conspiracy only affects the plaintiff individually, the allegations will not satisfy the class-based animus requirement."), *aff'd*, 770 F.2d 1070 (3d Cir. 1985), *and aff'd sub nom.*, *Appeal of Hauptmann*, 770 F.2d 1070 (3d Cir. 1985).

Here, Gibson fails to show a conspiracy motivated by racial discriminatory animus because he offers only conclusory allegations of racial discrimination, including that Yancer and Agozzino "purposefully discriminated against [him] on the basis of race," that all Defendants engaged in a conspiracy to violate his constitutional rights "with racial animus," and that the IAD report's inaccuracies "exhibited racial hatred and animus."  (Doc. No. 2 at 11, 12, 31.)  Because

these conclusory allegations are insufficient to state a claim, Gibson's claims under § 1985 are not plausible.

It is also possible that Gibson seeks to bring his conspiracy claims pursuant to § 1983. The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). But when there is no underlying constitutional violation, a conspiracy claim necessarily fails. *Harvard v. Cesnalis*, 973 F.3d 190, 207-08 (3d Cir. 2020). Gibson has failed to allege that he suffered an underlying constitutional violation, so his conspiracy claims must be dismissed. *See id.*; *see also Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019) (*per curiam*) ("Finally, Talley's claims of . . . conspiracy fail because, as noted by the District Court, there is no underlying constitutional violation.").

### C. False Claims Act Claims

Gibson then asserts claims under the False Claims Act against Defendants based on allegations that he "received no help" after reaching out to Defendant Rogers about the February 20, 2015 incident of police misconduct and that this constituted a "misappropriation of

14

government funds when service is not rendered." (Doc. No. 2 at 24.) Gibson further alleges that Rogers violated the False Claims Act by sending a "fraudulent" correspondence representing that he was "working with" the District Attorney's Office on Gibson's police complaints. (*Id*. at 25.) Gibson's claims under the False Claims Act must be dismissed for two reasons.

For one, Gibson asserts no allegations that support a plausible False Claims Act claim. The False Claims Act, 31 U.S.C. § 3729, *et seq*., "enables private parties, known as relators, to bring enforcement actions on behalf of the United States to recover funds which were fraudulently obtained, and to share in any resulting damages award." *Downey v. United States*, 816 F. App'x 625, 627 (3d Cir. 2020) (*per curiam*). Importantly, the statute targets fraud against the United States government, including against federal agencies. *See* 31 U.S.C. § 3729; *see also U.S., ex rel. Pilecki-Simko v. Chubb Inst*., 443 F. App'x 754, 759 (3d Cir. 2011) (stating that "a prima facie claim under the [False Claims Act] requires a plaintiff to show that (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent" (internal quotations omitted)). There are no allegations in Gibson's Complaint concerning fraudulent claims for payment made to the United States or its agencies.

For another, *pro se* litigants such as Gibson "may not pursue a qui tam action on behalf of the Government." *Downey*, 816 F. App'x at 627. This is because in qui tam actions, the United States remains the real party in interest, *see Gunn v. Credit Suisse Grp. AG*, 610 F. App'x 155, 157 (3d Cir. 2015) (*per curiam*), and "individuals proceeding pro se may not represent third parties in federal court," *see Downey*, 816 F. App'x at 627. So, Gibson is prohibited from pursuing False Claims Act claims *pro se*. *See id*. ("[T]he District Court properly held that Downey, a *pro se* relator, could not pursue the qui tam action."); *Gunn*, 610 F. App'x at 157

15

("[W]e do not hesitate to conclude that the District Court did not err in concluding that Gunn may not maintain this qui tam action in his pro se capacity as a relator on behalf of the United States."); *see also Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 246 (4th Cir. 2020) (affirming dismissal of qui tam complaint because the relator "cannot bring a pro se FCA qui tam action").

### D.     State Law Claims

Gibson last asserts state law claims for libel, but there is no basis for jurisdiction over Gibson's state law claims.  Having dismissed the federal claims against Defendants, the only independent basis for the Court's jurisdiction over state law claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co.*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).  An individual is a citizen of the state where they are domiciled, meaning the state where they are physically present and intend to remain.  *See Washington v. Hovensa, LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  Gibson states that he is a citizen of Pennsylvania.  (Doc. No. 2 at 4.)  He also states that the citizenship of Defendants is "unknown," which he says creates a "presumption of diversity of citizenship." (*Id*.)  But he includes Pennsylvania addresses for each of the Defendants, and he names as a Defendant the City of Philadelphia, which is a Pennsylvania citizen for jurisdiction purposes because it is a political subdivision of the Commonwealth of Pennsylvania.  *See Doolin v. Kasin*, 424 F. App'x 106, 109 (3d Cir. 2011) (citing *Moor v. Alameda County*, 411 U.S. 693, 717

(1973)).  So complete diversity is lacking, and thus Gibson's state law claims will be dismissed without prejudice for lack of jurisdiction.

IV.     **CONCLUSION**

For the reasons above, the Court will dismiss Gibson's Complaint in its entirety.  The following claims are dismissed with prejudice: (1) his 42 U.S.C. § 1983 claims stemming from the February 2015 incident and 2023 IAD investigation; (2) his conspiracy claims related to those two events; and (3) his claims under the False Claims Act.  For his claims related to the February 2015 incident and 2023 IAD investigation, Gibson has already been given an opportunity to bolster them (from his prior lawsuit) and has been unable to do so.  And Gibson, a *pro se* litigant, cannot bring claims under the False Claims Act.  So the Court concludes that further amendment of these claims would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story").  But the Court will give Gibson one last bite at the apple and dismiss without prejudice his claims related to the September 2023 incident.  Gibson may file an amended complaint in the event he can plead additional facts to cure the defects the Court has noted as to his claims related to the September 2023 incident.[7]  An Appropriate Order follows.

---

[7] Since Gibson chose not to name Cortes as a Defendant in this lawsuit, this dismissal does not preclude Gibson from bringing a new civil action against Cortes based on the September 2023 incident if he chooses to do so within the applicable statute of limitations.  The Court expresses no opinion on the merits of any such lawsuit.